[No. A045427. First Dist., Div. Three. Oct. 30, 1989.]

PHILIP McGOUGH, Plaintiff and Appellant, v.
UNIVERSITY OF SAN FRANCISCO, Defendant and Respondent.

1578

**COUNSEL**

Philip McGough, in pro. per., for Plaintiff and Appellant.

Seyfarth, Shaw, Fairweather & Geraldson, Robert L. Ford, Nick C. Geannacopulos and Michael J. Golabek for Defendant and Respondent.

**OPINION**

**WHITE, P. J.**—Appellant Philip McGough was denied tenure by the University of San Francisco (USF). He filed suit in superior court, alleging causes of action for wrongful termination, breach of contract, breach of the

covenant of good faith and fair dealing, and intentional infliction of emotional distress. The trial court granted USF's motion for summary judgment, finding that all causes of action were preempted by the National Labor Relations Act (NLRA). We affirm.

## FACTS

Appellant was employed as an associate professor in the McLaren School of Business at USF from 1983 to 1987. During this time appellant was a member of the USF Faculty Association, the collective bargaining representative for USF faculty. A collective bargaining agreement (CBA) existed between USF and the Faculty Association when appellant was hired, but that agreement expired on June 30, 1986. The CBA contained standards for evaluating tenure applications which required that USF base its tenure decisions on the following criteria: (1) teaching experience and abilities; (2) research or other creative work; and (3) service to USF and the community.

In November of 1986—five months after the CBA had expired—appellant filed an application for tenure and promotion. USF informed appellant that it would abide by the CBA's provisions regarding tenure even though that agreement had expired. Appellant submitted his tenure application on forms established by the CBA, and his application was reviewed pursuant to the standards and procedures outlined in that agreement.

Gary Williams, the then recently appointed dean of the McLaren School of Business, had the responsibility to determine whether appellant should be granted tenure.[1] Dean Williams denied appellant's application for tenure. In his deposition testimony, Dean Williams stated he denied the application because he believed appellant's research and professional achievements were "minimal and below standard" and his community service was only "average or less than average."

After appellant learned he had been denied tenure, he filed a grievance through the Faculty Association. Appellant's grievance was heard and decided pursuant to the grievance procedures established by the CBA. However, USF refused to refer the dispute to arbitration because an earlier federal court suit established that USF had no obligation to arbitrate grievances which arose after the CBA expired.

After USF refused to arbitrate his grievance, appellant filed suit in superior court alleging causes of action for wrongful termination in violation of

---

[1] Williams became the dean of the business school in August of 1986. In June of 1986, appellant met with Dean Williams's predecessor—Dean Bernard Martin—to review his progress towards tenure. During this meeting, Dean Martin informed appellant that his performance was generally acceptable and that he expected appellant would be granted tenure.

the covenant of good faith and fair dealing, wrongful termination in violation of public policy, breach of contract, bad faith denial of the existence of a contract, intentional infliction of emotional distress, and specific performance.[2] After considerable discovery, USF filed a motion for summary judgment. Before USF's motion for summary judgment was heard, appellant voluntarily abandoned his causes of action for wrongful termination in violation of public policy and specific performance. The trial court granted USF's motion for summary judgment as to the remaining causes of action on the ground that they were preempted by the NLRA. On appeal, appellant has also abandoned his cause of action for wrongful termination in violation of the covenant of good faith and fair dealing in light of our Supreme Court's decision in *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373]. Consequently, on appeal we are concerned with only three of the six causes of action alleged in the complaint: breach of contract; bad faith denial of the existence of a contract; and intentional infliction of emotional distress.

## DISCUSSION

■ "Summary Judgment is proper where the papers submitted show there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant who makes the motion must negate a necessary element of the plaintiff's case or establish a complete defense, so that under no hypothesis is there any factual matter requiring a trial. [Citation.] On appeal, we must construe the opposing party's evidence liberally, viewed in the light most favorable to that party. [Citation.]" (*Rodriguez* v. *Yellow Cab Cooperative, Inc.* (1988) 206 Cal.App.3d 668, 673 [253 Cal.Rptr. 779].)

Relying on *Derrico* v. *Sheehan Emergency Hosp.* (2d Cir. 1988) 844 F.2d 22, the trial court concluded that appellant's breach of contract and related causes of action were preempted by the NLRA because appellant was, in effect, seeking to enforce the terms of the expired CBA by bringing a state breach of contract action. We agree with the court's reasoning with respect to the causes of action for breach of contract and bad faith denial of the existence of a contract. With respect to the cause of action for intentional infliction of emotional distress, we affirm the trial court's order on the

---

[2] After appellant filed his complaint USF removed the case to federal court. Appellant moved to remand the case back to the superior court. The federal trial court remanded the action on the ground that it had no original jurisdiction to hear the case under section 301 of the Labor-Management Relations Act. (29 U.S.C. § 185(a).) Appellant suggests that by doing so, the federal trial court determined that his action was not preempted by the NLRA. However, the record is absolutely clear that the trial court ruled only that it had no jurisdiction under section 301; the court did not determine whether the action was preempted by the NLRA.

alternative theory that USF's alleged conduct was not extreme and outrageous as a matter of law.

### A. *The Derrico Case.*

In *Derrico* v. *Sheehan Emergency Hosp., supra,* 844 F.2d 22, the plaintiff was a union nurse who worked for the defendant hospital. He was fired in 1986, at a time when the CBA between the hospital and the union had expired, but before impasse had been reached in negotiations for a new CBA. By law, the hospital was required to maintain the "status quo" regarding the terms and conditions of employment until an impasse was reached. (844 F.2d at pp. 23, 26.) The expired CBA provided that employees could be discharged only for just cause. The plaintiff contended he was discharged without good cause. (844 F.2d at p. 23.) Consequently, he filed an action with the National Labor Relations Board (NLRB), claiming that he was fired for his involvement in union activities, and not for any good cause. (*Id.,* at pp. 23-24.) The NLRB rejected this claim and the plaintiff then filed a civil action in state court for breach of contract. This action alleged that an implied contract—independent of the CBA but encompassing its terms—arose by virtue of the parties' conduct in continuing their relationship under the CBA's terms following its expiration. The plaintiff alleged that since this implied contract was separate from and independent of the expired CBA, it was separately enforceable under state contract law. (*Id.,* at p. 24.)

The Court of Appeals concluded that the plaintiff's state court action was preempted by the NLRA. Relying on so-called "*Machinists* preemption"[3] the court concluded that the plaintiff's action was preempted because recognizing an independent contract under state law in these circumstances would interfere with policies implicated by the structure of the NLRA itself. (844 F.2d at p. 28.) Specifically, the court found that the plaintiff's theory was inconsistent with the NLRA's structure in two respects: First, it would artificially limit the parties' options after the CBA expired and, secondly, it would significantly affect the collective bargaining process that lies at the heart of the NLRA. (*Id.,* at p. 29.)

Clearly, the present case is extremely similar to *Derrico*. Here, as in *Derrico,* the appellant is essentially attempting to enforce the terms of an expired CBA by contending that an independent contract arose between the parties after the CBA expired. Appellant contends, however, that this case is distinguishable from *Derrico* because he has not alleged an implied con-

---

[3] *Machinists* v. *Wisconsin Emp. Rel. Comm'n* (1976) 427 U.S. 132 [49 L.Ed.2d 396, 96 S.Ct. 2548].

tract, but instead is contending that an *express* contract exists between the parties. According to appellant, this "express" contract is evidenced by USF's oral and written representations made after the CBA expired, the entire course of conduct between the parties, and other evidence. We reject this argument and conclude that *Derrico* controls this case.

B. *The Evidence Introduced in Support of the Motion for Summary Judgment Establishes That the Alleged Express Contract Merely Incorporated the Terms of the Expired CBA.*

Appellant contends that the express contract between the parties encompassed terms in addition to and outside the scope of the collective bargaining agreement. However, appellant's own deposition testimony—introduced in support of the motion for summary judgment—shows that this is not the case. This testimony unequivocally demonstrates that appellant's "individual" employment contract with USF is nothing more than the expired collective bargaining agreement:

"[Defense Counsel]: What did Randy New [associate USF dean] specifically tell you during that second conversation with regards to tenure and promotion?

"[Appellant]: That the University would follow all procedures as under the collective bargaining agreement. [¶] And the forms he gave me, of course, were the forms developed under the collective bargaining agreement.

"Q. Did he say anything would change?

"A. No.

"Q. He did not say anything about arbitration?

"A. No.

"Q. So as far as you were concerned after that conversation, was it your understanding that the exact terms of the collective bargaining agreement would apply?

"A. Yes.

"Q. Any other conversations with University officials concerning the effect of the expiration of the collective bargaining agreement?

"A. None."

Significantly, although this exchange was quoted in the respondent's brief, appellant has not pointed to any evidence in the record which contradicts or undermines his own sworn testimony. Consequently, appellant has not shown there is a triable issue of fact that his "independent" agreement with the university encompassed terms other than those contained in the expired CBA.

C. *Appellant's State Action Is Preempted Even Though He Has Alleged an "Express" Contract With USF.*

As previously mentioned, appellant's primary contention is that this case is not controlled by *Derrico* because that case involved an implied contract, while in the present case appellant alleges he formed an express contract with USF. We conclude that the underlying rationale of *Derrico* applies in this case, even though appellant has alleged an express contract.

Before we turn to appellant's specific argument, it will be useful to review some basic contract law. Contracts are generally described as being either "express," "implied in fact," or "implied in law" (quasi-contracts). (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, §§ 11-12, pp. 46-47.) An express contract is one whose terms are stated in words (either oral or written). (Civ. Code, § 1620.) An implied-in-fact contract is one whose existence and terms are manifested by conduct. (Civ. Code, § 1621.) ▪ "The distinction between *express* and *implied-in-fact* contracts relates only to the *manifestation of assent*; both types are based upon the expressed or apparent intention of the parties. 'The true implied contract . . . consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words.'" (1 Witkin, *supra,* Contracts, § 11, p. 46, italics in original.) Implied-in-fact contracts must be distinguished from implied-in-law (or quasi) contracts. "'[U]nlike true contracts, quasi-contracts are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice.'" (*Id.,* § 12, p. 47, quoting Rest.2d, Contracts, § 4, com. b.)

▪ The plaintiff in *Derrico* contended that a *true* implied-in-fact contract arose from the parties' conduct because they continued their relationship under the CBA's terms following its expiration. (*Derrico, supra,* 844

F.2d at p. 24.)[4] Thus, the only distinction between the plaintiff's contention in *Derrico* and appellant's contention here concerns the manner in which assent was manifested. Appellant contends USF agreed orally and in writing that it would abide by the terms of the CBA, while the *Derrico* plaintiff contended such an agreement could be implied solely from conduct. We believe this distinction is meaningless given the facts of this case.

It is essential to note that USF was required by federal labor law to honor the terms and conditions of the expired labor agreement until a new agreement was reached or contract negotiations offered no hope of reaching an agreement. (*U.A. 198 Health & Welfare* v. *Rester Refrigeration* (5th Cir. 1986) 790 F.2d 423, 425.) Failure to honor the terms of the CBA before impasse[5] was reached would have been an unfair labor practice under the NLRA. (*Derrico* v. *Sheehan Emergency Hosp., supra,* 844 F.2d at p. 26; *Rester Refrigeration, supra,* 790 F.2d at p. 425.)

Consequently, USF's representation to appellant that it would adhere to the terms of the CBA in evaluating his tenure application was nothing more than a statement that it would follow the law. In our view, these statements may not form the basis of an express contract separately enforceable under state law.

The reasons expressed by the *Derrico* court for finding preemption in that case apply with equal force here. The *Derrico* court reasoned that the plaintiff's implied contract theory was "inconsistent with the NLRA's structure for two reasons. First, it would artificially limit the parties' post-expiration options. When bargaining alone does not produce consensus, the NLRA contemplates that both sides will resort to 'economic weapons,' [citations]. Such resort is an integral part of the balance the NLRA strikes between labor and management. [Citation.] The possibility that a term of an expired CBA might become an 'implied' contract under state law would tie the parties' hands in a manner inimical to this facet of the NLRA's collective bargaining process. Exposure to liability at state law for breach of contract under the circumstances of this case would significantly alter the labor-management relationship that follows expiration of a CBA.

"Second, Derrico's theory would significantly affect the collective bargaining process that lies at the heart of the NLRA. [Citations.] Expiration

[4] Specifically, the plaintiff contended: " 'The individual employees agreed that, when they worked, [their] services would be governed' by the *status quo* defined by the expired CBA—giving rise to a 'completely independent' employment agreement 'separate from the expired [CBA].' " (*Derrico, supra,* 844 F.2d at p. 24.)

[5] Impasse was not reached as of April 1987—a date well after the filing and rejection of plaintiff's tenure application.

of a CBA plainly works a significant change in the parties' relationship. Just as plainly, the prospect of that change and the mutual awareness of the tactics to which either side may thereafter resort provide the parties with incentives to negotiate. . . . To derive an implied contract at state law from the very post-expiration maintenance of *status quo* that the [NLRA] bargaining obligation *requires* would raise the chaotic prospect that mere compliance with the NLRA would give rise to a contractual commitment in every state where such agreements may be implied from parties' conduct. This consequence would be tantamount to imposing a contract on the parties, a notion that has always been anathema to the NLRA [citations]. The potential for disrupting collective bargaining is thus especially serious in this case and compels the conclusion that the state law claim is preempted by the NLRA." (*Derrico, supra,* 844 F.2d at p. 29.)

To repeat, the only difference between the present case and *Derrico* is that here USF expressly told appellant it would follow the procedures outlined in the expired CBA. By doing so, however, USF merely acknowledged that it would do what the law required. The possibility that a term of an expired CBA might become an express contract under state law merely because an employer expressly acknowledged its legal obligation to adhere to the contract "would tie the parties' hands in a manner inimical to [the post-expiration] collective bargaining process." (844 F.2d at p. 29.) In addition, to derive an express contract from such statements "would raise the chaotic prospect" that similar statements would always create a separately enforceable contractual commitment under state law. "This consequence would be tantamount to imposing a contract on the parties, a notion that has always been anathema to the NLRA . . . ." (*Ibid.*)

In sum, we conclude that *Derrico*'s rationale applies with full force to this case; consequently, the NLRA preempts appellant's causes of action for breach of contract and bad faith denial of the existence of a contract.

D. *Intentional Infliction of Emotional Distress.*

■ Relying on *Farmer* v. *Carpenters* (1977) 430 U.S. 290 [51 L.Ed.2d 338, 97 S.Ct. 1056] and other cases, appellant contends that even if his causes of action based on contract are preempted by the NLRA, his cause of action for intentional infliction of emotional distress is not.[6] ■ We need not decide this issue since we conclude that appellant has

---

[6] Appellant does not argue that his cause of action for bad faith denial of the existence of a contract should be treated differently than the cause of action for simple breach of contract. Consequently, he implicitly concedes that these two causes of action are so intertwined that they must stand or fall together.

failed to establish a triable issue of fact that USF's conduct was extreme and outrageous.[7]

■ An essential element of a cause of action for intentional infliction of emotional distress is "extreme and outrageous conduct by the defendant." (*Cervantez* v. *J.C. Penney Co.* (1979) 24 Cal.3d 579, 593 [156 Cal.Rptr. 198, 595 P.2d 975]; *Yurick* v. *Superior Court* (1989) 209 Cal.App.3d 1116, 1123 [257 Cal.Rptr. 665].) ■ We conclude that the facts alleged by appellant do not meet this standard as a matter of law.

In his verified complaint, appellant pointed to the following instances of extreme and outrageous conduct: "A) After informing Plaintiff that he had met the standards for tenure [USF], without any warning, den[ied] Plaintiff tenure. [¶] B) Without any warning, [USF] refus[ed] to agree to the contractual obligation of taking the decision to binding arbitration or an impartial hearing. [¶] C) Telling lies about Plaintiff."[8]

■ "Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." (*Cervantez* v. *J. C. Penney Co., supra,* 24 Cal.3d at p. 593; *Yurick* v. *Superior Court, supra,* 209 Cal.App.3d at p. 1123.) ■ The conduct challenged here does not even arguably meet this standard.

Plaintiff first complains that USF's conduct was outrageous because it informed him that he had met the standards for tenure and then denied him tenure. What appellant fails to note is that the representations regarding his qualifications for tenure were made informally by a *prior* dean who did not have the ultimate responsibility to grant or deny tenure. Although the new dean may have been well advised to give appellant adequate warning that he

---

[7] The trial court dismissed the infliction of emotional distress cause of action because it believed that cause of action was also preempted by the NRLA. However, we may affirm a summary judgment if there is any legal basis upon which the trial court may have made the order. (*Rodriguez* v. *Yellow Cab Cooperative, Inc., supra,* 206 Cal.App.3d at p. 673.) Consequently, we need not determine whether the trial court's precise reason for dismissing the cause of action is correct.

[8] In his cause of action for wrongful termination in violation of public policy, appellant also alleged that USF denied him tenure as a ploy in labor negotiations which were then taking place between USF and the Faculty Association. According to this cause of action, USF denied tenure to appellant "to demonstrate to the members of the faculty association . . . how vulnerable even such a strong candidate as [appellant] was and that the Union could not protect its members." However, as indicated (see p. 1581, *ante*), appellant abandoned this cause of action before summary judgment. Moreover, in our view, since this conduct would constitute an unfair labor practice under the NLRA, appellant's cause of action for intentional infliction of emotional distress would be preempted by the NLRA to the extent it is grounded on this conduct. (*Farmer* v. *Carpenters, supra,* 430 U.S. at p. 305 [51 L.Ed.2d at p. 353]; *Buscemi* v. *McDonnell Douglas Corp.* (9th Cir. 1984) 736 F.2d 1348, 1351-1352.)

believed appellant did not meet the standards for tenure, we do not believe this conduct even approaches the outrageous. Instead, it is a case of a difference of opinion between the new and old dean.

Secondly, USF's refusal to take appellant's grievance to arbitration can hardly be considered outrageous in light of the federal court decision that USF had no obligation to arbitrate disputes arising after the termination of the CBA.

Finally, appellant's unspecific complaint that USF told "lies" about him cannot, in our view, support an infliction of emotional distress claim. Appellant has not specified in his complaint or in discovery what those lies might be. Without more, we cannot say that this conduct was outrageous.

Since we have determined summary judgment was properly granted for the reasons already stated, we do not reach USF's alternative argument that appellant's state suit is preempted under *San Diego Unions* v. *Garmon* (1959) 359 U.S. 236 [3 L.Ed.2d 775, 79 S.Ct. 773] because it falls within the NLRB's original jurisdiction.

The judgment is affirmed.

Barry-Deal, J., and Strankman, J., concurred.