[No. A065122. First Dist., Div. Five. May 26, 1995.]

MARGARET L. BANKS, Plaintiff and Appellant, v.
DOMINICAN COLLEGE et al., Defendants and Respondents.

## COUNSEL

Margaret L. Banks, in pro. per., for Plaintiff and Appellant.

Louis Spitters, Fabris, Burgess & Ring, Joseph I. Burgess and Karen M. Porter for Defendants and Respondents.

## OPINION

**THE COURT.**[1]—Appellant Margaret L. Banks contends the trial court wrongly granted summary judgment against her numerous legal claims. All these claims arise from her contentions that she was improperly given grades of "incomplete" in a private university program leading to a teaching credential, and was dismissed from this program, after a number of disturbing episodes of unprofessional or unacceptable conduct by appellant caused

---

[1]Before Peterson, P. J., King, J., and Haning, J.

the program's faculty to reasonably believe she would not be able to successfully complete the course of study or become a suitable teacher of young people. We find no error and affirm. We also grant respondents' requests, and impose substantial sanctions upon appellant for the filing and prosecution of a frivolous appeal.

## I. FACTS AND PROCEDURAL HISTORY

Appellant enrolled as a student at respondent Dominican College (Dominican) in a one-year graduate program leading to a teaching credential. She had previously successfully completed a program at Dominican in the field of legal studies.

The teaching program at Dominican includes two phases: The first is a semester of more traditional course work; this is followed by a semester of clinical experience teaching in nearby public elementary schools, thereby allowing student teachers to learn on the job and demonstrate their skills in a real world setting.

Initially, appellant's performance and grades, in her first semester of more traditional graduate course work, were satisfactory or better. However, appellant had a number of other, more personal problems connected with her program of study, including numerous acrimonious disputes with students, faculty, and other individuals she encountered while participating in the program. The major problems concerned appellant's clinical experience in the second semester of the program, in which she exhibited erratic and sometimes disturbing episodes of unprofessional behavior as a student teacher in public school classrooms under the supervision of respondent Novato Unified School District (District). To appellant's way of thinking, these problems were not the result of her own strange and disturbing actions, or the legitimate criticism of her unusual behavior and erratic conduct while a student teacher in the classroom, but were in some way connected with a vast, vaguely defined conspiracy to illegally prevent her from receiving a teaching credential and suppress evidence favoring her claims. This conspiracy apparently included almost every person with whom appellant came into contact, including the elementary school teachers who complained about appellant's disruptive behavior at their school, the faculty of Dominican who responded to those complaints, the trial judge who granted summary judgment against her claims, and even her own numerous attorneys, including her fifth and sixth, who both tried to withdraw from the case in the trial court after it became clear that even they could not tolerate appellant's uncooperative behavior, emotional outbursts, and unsubstantiated accusations.

The undisputed evidence in the record, however, shows that appellant was not allowed to complete the graduate teaching program at Dominican in the

spring of 1989 because her clinical performance as a student teacher was highly unsatisfactory, in the professional opinion of numerous teachers and faculty members. Despite repeated warnings and counseling, appellant's conduct did not improve, and if anything became more erratic and disturbing.

For instance, appellant repeatedly left young students in her second grade class unattended and unsupervised, contrary to her instructions and the school's regulations, and in violation of the warnings of her faculty supervisors and the dictates of good sense. Appellant was inappropriately harsh with her young students, apparently due to her frequent mood swings or other emotional problems, and showed a marked tendency to take out her frustrations on young students by being angry, abrupt, sarcastic, or impatient in the classroom, which in turn upset the students. Numerous disturbing incidents of this type led her faculty supervisors at the District and the Dominican faculty to believe appellant was unsuited to be in charge of young people.

Appellant also had difficulty maintaining order in the classroom, and was unable or unwilling to properly perform many routine teaching duties, such as giving a spelling lesson, or accurately explaining the concept of fractions; she had difficulty in performing many of the more basic or prosaic duties of a teacher and in providing an appropriate environment for learning.

Appellant also had difficulties with the parents or guardians of students. For instance, she got into an altercation with and verbally abused the grandmother of one student, because the grandmother had not gone to the Goodwill to get the particular type of shoes which appellant wanted the student to wear in a school play appellant was presenting. Indeed, appellant's penchant for putting on plays rather than attending to more conventional teaching duties led to some of her worst performances, as when she disrupted a number of different classes in progress by going room to room looking for students whose skin color was "dark enough" to be in a play she wrote about the late Dr. Martin Luther King, Jr.; or allowed preparation of the play to disrupt other classes; or refused to release students to go to their other scheduled classes and activities because she wanted them to practice her play instead. She also created difficulty by refusing to follow instructions that students should get on with their educations rather than waste classroom time discussing a recent lurid murder in the area, as appellant wished to do.

Appellant also resorted to inappropriate physical violence with young students, such as in pushing a student down into a chair roughly. It was the

observation of this incident and other disturbing behavior which led school employees of the District to finally decide that it was inappropriate for appellant to remain in the classroom, and that her presence in the class could no longer be tolerated. Consequently, appellant was told not to return to the elementary school—an instruction which she immediately violated by returning to the school that same day. As a result of her unprofessional conduct and unacceptably poor academic performance in the clinical program, which caused the District to end her work as a student teacher, appellant was given grades of "incomplete" and was not allowed to graduate from the Dominican program.

Appellant loudly, vehemently, and repeatedly protested. She demanded relief and filed grievances. When the decision to end her clinical teaching assignment and not allow her to receive a credential to teach was upheld under Dominican's internal review procedures, appellant filed this action in 1990, through her first counsel, contending that these actions by Dominican and the District were wrongful and constituted a breach of contract, a breach of the covenant of good faith and fair dealing, intentional or negligent interference with prospective economic advantage, libel, slander, misrepresentation, and intentional or negligent infliction of "emotional distress" upon her.

Years of litigation and procedural wrangling followed. The most relevant aspect of this expensive, multiyear litigation for present purposes is the fact that, despite appellant's six changes of counsel, her attempts to disqualify the trial judge who ruled against her, her attempted refiling of another lawsuit against the same defendants in which she improperly sought to split her causes of action, her filing of a writ petition which was denied by this district, her attempts to have opposing parties, their counsel, or secretaries prosecuted or investigated by law enforcement agencies, and other matters too numerous to mention, the trial court eventually granted summary judgment to both Dominican and the District. The trial court denied appellant's motion for a new trial, and appellant filed this appeal from a resulting judgment.

## II. Discussion

We affirm. Summary judgment was long overdue, and was proper because there were no relevant disputes of fact; Dominican and the District were entitled to judgment, as a matter of law, that their actions were not arbitrary or capricious or otherwise wrongful. This appeal is totally without any arguable merit and frivolous, and merits an award of substantial sanctions against appellant.

A. *Summary Judgment*

■ It is well settled that in actions challenging the academic decision of a private university regarding a student's qualifications for a degree, we exercise a highly deferential and limited standard of review. "There is a widely accepted rule of judicial nonintervention into the academic affairs of schools." (*Paulsen* v. *Golden Gate University* (1979) 25 Cal.3d 803, 808 [159 Cal.Rptr. 858, 602 P.2d 778] (*Paulsen*).) We may only overturn the university's decision if we find it to be arbitrary and capricious, not based upon academic criteria, and the result of irrelevant or discriminatory factors. (*Id.* at pp. 808-809; accord, *Wong* v. *Regents of University of California* (1971) 15 Cal.App.3d 823, 830 [93 Cal.Rptr. 502].) We must uphold the university's decision "unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." (*Regents of University of Michigan* v. *Ewing* (1985) 474 U.S. 214, 225 [88 L.Ed.2d 523, 532, 106 S.Ct. 507] (*Ewing*).)

■ In keeping with this highly deferential standard of review, cases challenging academic dismissals often will appropriately be resolved as a matter of law on summary judgment: "In cases involving academic dismissal, educational institutions have the right to receive summary judgment unless there is evidence from which a jury could conclude that there was no rational basis for the decision or that it was motivated by bad faith or ill will unrelated to academic performance." (*Clements* v. *Nassau County* (2d Cir. 1987) 835 F.2d 1000, 1004 (*Clements*).) It is also well established that a litigant may not avoid summary judgment by attempting to generate disputes of fact as to issues which are not material to the legal theories and claims in issue: "The presence of a factual dispute will not defeat a motion for summary judgment unless the fact in issue is a material one." (*Saldana* v. *Globe-Weis Systems Co.* (1991) 233 Cal.App.3d 1505, 1518 [285 Cal.Rptr. 385], citing *Hidalgo* v. *Anderson* (1978) 84 Cal.App.3d 378, 381 [148 Cal.Rptr. 557] (per Halvonik, J.).)

■ Summary judgment was properly granted here on all of appellant's claims arising out of her dismissal from the graduate teaching program at Dominican in which she was a student, because the evidence submitted demonstrates without any dispute of material fact that her dismissal was unquestionably related to her unacceptable academic performance in this clinical teaching program; the decision certainly had a rational basis; and the dismissal was not arbitrary and capricious, discriminatory, or otherwise wrongful. (*Clements, supra*, 835 F.2d at pp.1004-1006.)

In light of the unusual nature of appellant's claims, and in order to ensure that nothing was overlooked, we have gone beyond the briefs of the parties

in order to conduct our own research on relevant precedents in this area of the law. One recent case not cited by the parties is instructive: *Bilut* v. *Northwestern University* (1994) 269 Ill.App.3d 125 [206 Ill.Dec. 531, 645 N.E.2d 536] (*Bilut*). In *Bilut*, as here, a graduate student alleged she was improperly denied a graduate degree by a private university. The court rejected these claims as a matter of law, under the same standard of review we must apply: "The standard of review which applies to plaintiff's case is the arbitrary and capricious standard: A university may not act maliciously by arbitrarily and capriciously dismissing or refusing to award a degree to a student on the ground of academic deficiencies if said student fulfills its degree requirements. [Citations.] A plaintiff's burden of establishing arbitrary and capricious conduct on the part of a private college or university, however, is a heavy one. [Citation.] A plaintiff must show that [her] dismissal was 'without any discernable rational basis.' [Citations.] Courts have adopted this deferential standard because of their reluctance to interfere with the academic affairs of a private college or university. [Citations.]" (*Id.*, 645 N.E.2d at pp. 542-543.)

The *Bilut* court rejected the student's claims that her dismissal resulted from retaliatory animus on the part of a faculty member with whom she had had a personal disagreement, because the evidentiary record indicated the decision in fact was made or concurred in by numerous faculty members, as in our case, and was based upon sound academic criteria: "In short, the record shows that there was a discernable rational basis for the decisions of defendant and its faculty regarding plaintiff's dissertation. We therefore will not overturn a decision by defendant in regards to plaintiff's academic qualifications." (645 N.E.2d at p. 543.)

The same is true here. Numerous teachers and faculty members employed both by the District and by Dominican all reached the same conclusion: Appellant's unacceptable performance in the clinical teaching program indicated she was unsuited to teaching, for sound academic reasons connected to her unusual and rather violent pedagogical style; her lack of good judgment; her inattention to normal teaching duties in favor of putting on plays she wrote, or engaging in free-form discussions with young people about a recent murder; and her inability to behave in a professional manner. As a matter of law, there were appropriate reasons for the academic decision adverse to appellant; and we will not second guess that determination— certainly not on this record, where we need not in fact resort to any highly deferential standard in order to uphold the trial court's summary judgment order. We also find the academic decision amply justified by the facts and proper reasons lying within the competence of the private university authorities. (See *Paulsen, supra*, 25 Cal.3d at p. 808; *Ewing, supra*, 474 U.S. at p.

225 [88 L.Ed.2d at p. 532]; *Clements*, *supra*, 835 F.2d at p. 1004; *Bilut*, *supra*, 645 N.E.2d at pp. 542-543.)

Thus, it is inaccurate for appellant to contend that Dominican and the District did not negate essential elements of her claims. An essential element of all claims such as appellant's, which seek to challenge an academic decision of a private university, is proof that the decision was arbitrary and capricious, because it was not based upon any discernible legitimate, rational basis. This appellant has not done; and summary judgment was not only proper, it was required by the applicable legal standards. (See *Clements*, *supra*, 835 F.2d at p. 1004.)

Moreover, appellant's claims would fail for independent reasons in any event. Dominican did not commit fraud or breach any express or implied contract with appellant; for lack of evidence of fraud or breach of contract, summary judgment on such claims was proper. (See *Paulsen*, *supra*, 25 Cal.3d at pp. 811-812; *Williams* v. *Howard University* (D.C. Cir. 1976) 528 F.2d 658, 660-661 [174 App.D.C. 85] [Summary judgment affirmed: "Williams has adduced no evidence of a violated contractual right, and his failure to present any facts to show improper motivation or irrational action on the part of Howard [University] vitiates any claim of gross arbitrariness for which courts may grant relief in a private setting."].)

Nor could there have been any valid claims for tort damages as a result of a breach of a covenant implied by law or fact into that contract, when the evidence shows Dominican complied with the terms of the contract and did not engage in any action extraneous to the contract which would frustrate appellant's assumed contractual rights; nor did it breach any duty owed to appellant. (See *Paulsen*, *supra*, 25 Cal.3d at pp. 811-812; see also *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 700 [254 Cal.Rptr. 211, 765 P.2d 373]; *Tollefson* v. *Roman Catholic Bishop* (1990) 219 Cal.App.3d 843, 855-856 [268 Cal.Rptr. 550] (*Tollefson*).)

The District also could not be liable for interference with appellant's prospective economic advantage, or for negligence, since the District did nothing wrongful or negligent to frustrate appellant's contractual rights or expectancy of employment as a teacher. Indeed, the District was required by principles of good morals and its responsibility to its students to remove appellant from a District classroom when it concluded, in good faith and based upon probable cause, that her continued disturbing presence was not in the best interests of its students; the District's notification to Dominican of this fact and the basis of this decision was justified, privileged, and in the

public interest; there was no breach of appellant's contract; and the District could not be liable in tort for its justified acts of claimed interference leading to no contractual breach and no unwarranted loss of economic advantage for appellant. (See *Morningstar, Inc.* v. *Superior Court* (1994) 23 Cal.App.4th 676, 695-697 [29 Cal.Rptr.2d 547]; *Bledsoe* v. *Watson* (1973) 30 Cal.App.3d 105, 108 [106 Cal.Rptr. 197].)

There could also be no liability for defamation here, because any statements of opinion as to appellant's unsuitability for a teaching position were not actionable as either slander or libel. "The statements before us do not impute crimes or dishonesty to [appellant]. Rather, they contain opinions that [appellant is] not performing [her] duties competently . . . . The assertions . . . relate directly to [her] fitness . . . . As such, they constitute protected statements of opinion which are not properly the subject of a libel action." (*Gregory* v. *McDonnell Douglas Corp.* (1976) 17 Cal.3d 596, 604 [131 Cal.Rptr. 641, 552 P.2d 425]; see also *Polygram Records, Inc.* v. *Superior Court* (1985) 170 Cal.App.3d 543, 551 [216 Cal.Rptr. 252]; *Dong* v. *Board of Trustees* (1987) 191 Cal.App.3d 1572, 1584 [236 Cal.Rptr. 912]; *Jensen* v. *Hewlett-Packard Co.* (1993) 14 Cal.App.4th 958, 970-971 [18 Cal.Rptr.2d 83].) The statements in issue here, like the statements to the effect that another teacher was " 'a babbler' " and " 'the worst teacher' " at a particular school, which Presiding Justice Racanelli found were not actionable in *Moyer* v. *Amador Valley J. Union High School Dist.* (1990) 225 Cal.App.3d 720, 725 [275 Cal.Rptr. 494], are necessarily statements of subjective opinion in accord with the author's views of the public interest, the "expression of subjective judgment by the speaker" (*ibid.*). "Viewed through that analytical prism, we are impelled to conclude that the statements are not actionable." (*Ibid.*)

Finally, there could be no liability for infliction of emotional distress here because the actions of respondents were not wrongful or negligent, and were not outrageous, as a matter of law. (See *McGough* v. *University of San Francisco* (1989) 214 Cal.App.3d 1577, 1587-1588 [263 Cal.Rptr. 404]; *Tollefson*, *supra*, 219 Cal.App.3d at p. 858.)

Appellant's arguments to the contrary are without merit and frivolous. Appellant does not deny, for instance, that she left schoolchildren unsupervised and unattended in violation of repeated warnings not to do so, or that her behavior toward the students and faculty members was inappropriate and unprofessional on numerous specific occasions. Rather than attempt to raise a legitimate issue of material fact, appellant makes vague, unsubstantiated allegations of wrongdoing and conspiracy, without fulfilling her duty of providing evidence in support of these claims.

Appellant did not file any evidence in the trial court which would contest the evidence relied upon by respondents. She did not specifically rebut the evidence showing inappropriate treatment of students and unprofessional behavior. She instead filed in the trial court an unauthenticated hearsay letter from a person who had never observed her teaching, excerpts from deposition testimony which were not relevant to the issue, and an unauthenticated tape recording made by a sixth grade student which apparently discussed appellant. None of this, obviously, raised any relevant disputed issue of fact sufficient to preclude summary judgment. The information appellant filed in the trial court was not proper evidence, and was not relevant in any event in creating any specific disputed issue of fact. Statements which are not evidence and which were not made by persons having any relevant knowledge or information simply do not raise material issues of fact precluding summary judgment.

Appellant also attempted to file more irrelevant evidence in untimely fashion, and filed a motion for new trial seeking to add more evidence after the trial court ruled, together with motions to disqualify the trial judge. However, the trial court did not abuse its discretion in denying the motion for new trial; the motion to disqualify was frivolous; and appellant's untimely attempts to file more evidence were properly rejected, since the evidence was not newly discovered and there was no good reason why appellant had not filed the documents in timely fashion. In addition, the documents appellant attempted to add would not have changed the result in any event; the documents suffered many of the same evidentiary failings and did not raise any relevant issue of fact regarding the legitimate reasons for appellant's dismissal.

Appellant also blames her previous attorneys for failing to properly protect her interests, and even claims one of her previous attorneys suppressed evidence in her favor for some reason. However, parties represented by counsel are bound by the actions of their counsel. Further, the evidence appellant claims was suppressed was also irrelevant to her dismissal from the program, and concerned her attempts to pursue respondents for other asserted wrongdoing regarding the setting of her curriculum, which was never even alleged as a claim in her complaint in this litigation.

Appellant attempts to suggest she never received any verbal warnings or criticism regarding her performance. However, a school, and certainly a private school such as Dominican, is not required to follow any particular procedure in warning students that they are not doing well prior to dismissal. (See *Board of Curators, Univ. of Mo.* v. *Horowitz* (1978) 435 U.S. 78, 89-90 [55 L.Ed.2d 124, 134-135, 98 S.Ct. 948].) Further, the record is replete with

evidence that respondents attempted to discuss their concerns with appellant; appellant's own deposition testimony acknowledged she had in fact been spoken to about the concerns of her teachers. Moreover, where a student teacher's behavior is found to be detrimental to young children, as here, it certainly would not be reasonable to require a lockstep procedure of verbal and written warnings followed by notes to the file, temporary suspensions, or a due process hearing before ending a student teaching assignment which is not in the best interests of the children. Dominican did make available to appellant a grievance procedure and written documentation of reasons for its actions, and appellant simply alleged that the statement of reasons she requested gave rise to her defamation claims. We find no evidence in the record indicating appellant was not treated fairly.

Appellant also contends her dismissal from the program may have been retaliatory, because it was based upon the disapprobation by certain teachers and faculty members of her misconduct in the clinical program and her unprofessional and disruptive behavior, such as her attempts to devote class time to murder discussions—an allegation which certainly does not raise any issue of material fact regarding the proper, legitimate, rational basis for the dismissal, which was clearly related to appellant's academic performance and qualifications. (See *Clements, supra*, 835 F.2d at p. 1005; *Bilut, supra*, 645 N.E.2d at pp. 542-543.)

Nor is this case similar to *Shuffer* v. *Board of Trustees* (1977) 67 Cal.App.3d 208 [136 Cal.Rptr. 527], upon which appellant mistakenly relies. The *Shuffer* decision did not deal with the merits of a decision by a private university; it was a mandamus action seeking to readmit a pupil to a course leading to a certification in psychotherapy at a public college. (*Id.* at p. 212.) The court did not reach the merits of the plaintiff's allegation of improper denial of a degree, and merely reversed a demurrer on procedural grounds, because a previous dismissal without prejudice did not constitute res judicata on the claims, and the claims were not properly subject to a plea in abatement. (*Id.* at pp. 216-217.) Here, by contrast, we deal with a private university decision, and are no longer at the pleading stage; appellant was required to come forward with facts demonstrating a material factual dispute for trial, and she has failed to do so. (See *Clements, supra*, 835 F.2d at pp. 1004-1006; see also *Paulsen, supra*, 25 Cal.3d at pp. 809-811.)

For the same reasons, this appeal does not bear any close resemblance to another of the cases upon which appellant relies, *Miller* v. *Dailey* (1902) 136 Cal. 212, 214, 220-221 [68 P. 1029], which was also a mandamus action seeking to readmit a pupil to a state-run public school; relief was granted because the trial court found the pupil was expelled for no apparent reason,

which is certainly not the case here (see *Clements*, *supra*, 835 F.2d at pp. 1004-1006).

Nor is this case remotely comparable to *Zumbrun v. University of Southern California* (1972) 25 Cal.App.3d 1, 7 [101 Cal.Rptr. 499, 51 A.L.R.3d 991], in which the plaintiff sought to challenge a professor's decision to end class early as part of a faculty strike and give plaintiff a "B" in the course. That case did not deal at all with an academic dismissal, and did not reach the merits of the dispute, since it merely disposed of legal issues arising as a matter of pleading. In cases dealing with the denial of a degree due to academic failures, the courts require an evidentiary showing that the university's decision is not based upon academic criteria and, thus, is arbitrary and capricious. (See *Paulsen*, *supra*, 25 Cal.3d at pp. 810-811.) In the present case, ". . . there is no evidence supporting a finding of arbitrary or bad faith action." (*Id.* at p. 811.)

The evidence presented to the trial court here clearly established that appellant was dismissed from the Dominican degree program due to numerous academic deficiencies and serious lapses of professional judgment, which rightly led employees of Dominican and the District to the perception that appellant could not successfully complete the course of study and become a teacher. Of course, appellant has a different perception; she contends she did nothing wrong and would have made a good teacher, if not for the wrongful actions and nefarious conspiracy of respondents. Appellant's "perception of [her]self, however, is not relevant. It is the perception of the decision maker which is relevant." (*Smith v. Flax* (4th Cir. 1980) 618 F.2d 1062, 1067; see also *Paulsen*, *supra*, 25 Cal.3d at pp. 808-811; *Clements*, *supra*, 835 F.2d at p. 1005.) Here, whether appellant received a degree was a matter resting in the professional judgment of the faculty and administration of Dominican; appellant was not entitled to a graduate teaching degree merely because she thought she should qualify for one. Appellant has completely failed to bring forward any evidence showing that the decision not to award her a degree was based upon anything other than the sound professional academic criteria and good judgment of Dominican and its faculty. Summary judgment was proper. (See *Clements*, *supra*, 835 F.2d at pp. 1004-1006.)

### B. *Sanctions*

Respondents also seek sanctions against appellant for filing a frivolous appeal. Respondents seek their attorney fees as sanctions in the sum of more than $50,000; it is also urged that appellant pay sanctions to the clerk of this court for the costs to the appellate court associated with this appeal.

(See *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179] (*Flaherty*); *Finnie* v. *Town of Tiburon* (1988) 199 Cal.App.3d 1, 16 [244 Cal.Rptr. 581] (*Finnie*); *Papadakis* v. *Zelis* (1991) 230 Cal.App.3d 1385, 1387-1388 [282 Cal.Rptr. 18]; *Papadakis* v. *Zelis* (1992) 8 Cal.App.4th 1146, 1150 [11 Cal.Rptr.2d 411] (*Papadakis II*).) We agree this appeal is frivolous, and substantial sanctions should be imposed. We will award sanctions to Dominican of $7,500 and to the District of $7,500, and will require appellant to pay sanctions to this court's clerk of $2,000 in order to partially defray the costs of processing this frivolous appeal. This opinion constitutes a written statement of our reasons for imposing sanctions under *Flaherty*, *supra*, 31 Cal.3d at page 654.

This appeal shows a disturbing similarity to the facts of previous cases in which the courts have been forced to award sanctions, including one of our prior opinions, *In re Marriage of Stich* (1985) 169 Cal.App.3d 64, 75-78 [214 Cal.Rptr. 919].) In *Stich*, as here, a determined litigant with no meritorious legal arguments went through a battery of retained lawyers, unfounded disqualification motions aimed at trial judges, and other similar vexatious maneuvers before proceeding in propria persona to prosecute a frivolous appeal for the apparent purpose of harassment. We assessed sanctions of $10,000. (*Id.* at p. 78.)

In *Finnie*, *supra*, 199 Cal.App.3d at pages 15-18, Division Four of this district faced a similar situation; there, a frivolous appeal resulted in sanctions payable to respondents in the sum of $14,000, and sanctions payable to the court, as compensation for the costs of processing a frivolous appeal, of an additional $2,324.

In *Bach* v. *County of Butte* (1989) 215 Cal.App.3d 294, 310-313 [263 Cal.Rptr. 565], another determined pro se litigant abused respondents and the court system; the Third District levied sanctions of $15,000 payable to respondents and $2,500 payable to the court, for the costs of processing the frivolous appeal.

In *Papadakis II*, *supra*, 8 Cal.App.4th at page 1150, Division Two of this district assessed sanctions in the sum of $20,000, of which one-half was ordered to be paid to respondents, and one-half to the court. (See also *California Casualty Management Co.* v. *Martocchio* (1992) 11 Cal.App.4th 1527, 1530-1531 [15 Cal.Rptr.2d 277] [A sanctions award totaling more than $216,000, after a plaintiff failed to rebut the defendants' evidence presented at summary judgment, could not be shifted to the litigant's insurer.].)

The arguments presented in this appeal by appellant were totally without merit and frivolous; no reasonable attorney after proper investigation could

have concluded there was any merit in appellant's claims, or that summary judgment was improperly granted; appellant could not and did not present any contrary evidence in the trial court which raised a contested issue of material fact. Moreover, it appears respondents were sued simply because they did what they were required to do by the dictates of good morals and their responsibility to young children. These considerations make this appeal doubly frivolous; it appears respondents were being punished by appellant for simply doing what their responsibility to the public and to young people required them to do.

While we recognize that appellant is prosecuting this appeal in propria persona, she also has an extensive legal background, having graduated from a legal studies program, and the papers she has filed in this court are technically proficient, demonstrating considerable legal knowledge, even though appellant's arguments on the merits are without substance and frivolous. Appellant's extensive knowledge of legal terminology and procedures allowed her to vex and harass respondents even more effectively, and caused this appeal to be much more time-consuming and exhaustive of court resources than it should have been. Appellant certainly has enough legal knowledge to cause a lot of damage, even though she is not subject to the oath, disciplinary rules, and ethical responsibilities binding on admitted attorneys. As such, there is a need to deter further abuse of the legal system by this appellant.

The record also reveals that appellant is no indigent litigant. She was well able to retain numerous counsel. It was only because retained counsel after retained counsel withdrew from her representation, citing ethical considerations and appellant's unreasonable demands and actions, that she appears in the case at bench in propria persona. Appellant has a residence in San Rafael and acquired a vacation home near Lake Tahoe while attending the Dominican program; thus, she has substantial assets and will not suffer unduly from a sanctions award.

Finally, it is noteworthy that appellant has for years implacably pursued respondents and seemingly almost everyone else she has encountered in the course of her teaching program and this litigation, without ever presenting any competent proof that her complaints result from the misbehavior of other persons, rather than appellant's own personal problems and misconduct. Her unbalanced and bizarre conduct in this litigation only confirmed the correctness of the decision she challenged, by demonstrating that appellant was not, in fact, qualified to teach or act as a role model for young people. This course of conduct has caused respondents to suffer large expenses which would better have been spent for beneficial educational purposes; while the

sanctions we award will not fully compensate for the damage appellant has caused, the award will have a compensatory and deterrent function.

We also wish to make clear to appellant that she should immediately desist from pursuing her frivolous and nonmeritorious personal vendetta against respondents, in favor of some legitimate outlet for her considerable energy and dramatic talents. If she continues down her present course, she runs the likely risk of the award of much greater sanctions, whether in the trial court or on appeal.

III.  DISPOSITION

The judgment is affirmed. Sanctions are awarded against appellant as follows: (1) to respondent Dominican, $7,500; (2) to respondent District, $7,500; (3) to the clerk of this court, $2,000, to be paid by sending a check in this amount to the clerk of this court within 30 days of the date this opinion becomes final.

Appellant's petition for review by the Supreme Court was denied August 17, 1995. Mosk, J., was of the opinion that the petition should be granted.