Filed 12/6/21  Sharif v. The Regents of the University of Cal. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| RANA SHARIF, | B308941 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV32356) |
| v. | |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara Ann Meiers, Judge.  Affirmed in part and reversed in part with directions.

The Cook Law Firm, Philip E. Cook, Brian J. Wright; Public Counsel, Jill Thompson and Mallory Sepler-King for Plaintiff and Appellant.

McCune & Harber, Stephen M. Harber and Amy Arseneaux Evenstad for Defendant and Respondent.

Plaintiff Rana Sharif was a doctoral candidate at University of California, Los Angeles (UCLA). After she was disqualified from her doctoral program for failing to make progress toward her Ph.D. and for an unsatisfactory dissertation, she sued defendant Regents of the University of California (the Regents) for discrimination, breach of an implied-in-fact contract, promissory estoppel, and violation of her due process rights. The Regents demurred to Sharif's complaint on the grounds that she had failed to exhaust her administrative and judicial remedies and otherwise failed to state any cause of action. The trial court sustained the demurrer without leave to amend, and this appeal followed. Although we agree that the trial court properly sustained the demurrer as to Sharif's discrimination and contract-based causes of action, Sharif may proceed on her due process and declaratory relief causes of action.

## BACKGROUND

I.      Sharif is disqualified as a Ph.D. candidate.

According to the allegations of the operative pleading, Sharif is a woman of color, a mother of young children, the caretaker of a disabled parent, and a primary source of income for her family. In 2006, Sharif began pursuing her Ph.D. in gender studies at UCLA, advancing to a doctoral candidacy in 2012. She gave birth in 2009 and again in 2014, and her oldest child has a congenital condition that required three surgeries and ongoing care.

UCLA requires its departments to set a normative time to degree, meaning the number of quarters in which students should complete the requirements for a doctorate. The Department of Gender Studies anticipates it will take six years to

2

achieve a Ph.D., although leaves of absence are permitted. Despite this normative-time-to-degree policy, Sharif alleged that the department has never enforced it against anyone except her, although former and current graduate students have taken more than six years to complete their degrees.

In September 2016, Sharif's supervisory doctoral committee set September 15, 2017 as the deadline for Sharif to complete her dissertation. Sharif alleged that the committee did not tell her that failure to meet the deadline would result in her disqualification as a doctoral candidate or other consequence. In August 2017, Sharif submitted a "completed draft" of her dissertation.

On September 11, 2017, the department recommended terminating Sharif's status as a doctoral student for two reasons. First, she had exceeded by five years the normative six years to complete a Ph.D. Second, Sharif's dissertation was "not [of] a sufficient academic quality to pass." A week later, the graduate division informed Sharif that it agreed with the department's recommendation. At that time, Sharif was given a document, "Excerpt from Standards and Procedures for Graduate Study at UCLA."[1] It stated that disqualification of graduate students was

---

[1] The parties have filed separate motions asking us to take judicial notice of UCLA's Standards and Procedures for Graduate Study and UCLA Procedures 230.1 and 230.2. The Regents also ask us to take judicial notice of UCLA's Graduate Student Academic Rights and Responsibilities handbook. We grant the February 11, 2021 and May 14, 2021 requests for judicial notice. (See generally Evid. Code, § 451, subd. (a); *Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320 [Regents internal policies enjoy status equivalent to state statutes];

at the discretion of the dean of the concerned graduate division, meaning that the dean had "final authority over this decision" and an "appeal can go no higher."

Sharif appealed her disqualification to the Interim Chair of the Department of Gender Studies, arguing that the decision should be reversed for (1) procedural error and (2) substantial mitigating circumstances.

First, as to procedural error, Sharif argued: she lacked notice of the possibility of her disqualification; she had no opportunity to be heard before the recommendation to disqualify her was made; and the department's procedural process was unclear at best.

Second, as to mitigating circumstances, she identified personal circumstances that contributed to her prolonged time to degree: her marital status, in that her 2006 marriage to a Jordanian citizen involved a longer than anticipated immigration process; her husband's underemployment required Sharif to take additional teaching jobs; her two pregnancies, during which UCLA did not tell her about benefits to which she was entitled; caring for her children, one of whom was disabled; caring for her mother who was on disability; having to adjust her project apparently because conflict in the Israeli/Palestinian region affected her ability to do fieldwork for her dissertation; and her personal disability for which she was treated in fall and summer 2017.

On November 3, 2017, the Interim Chair of the department informed Sharif that the doctoral committee had discussed her

*Bockover v. Perko* (1994) 28 Cal.App.4th 479, 486, fn. 5 [granting judicial notice of UCLA grievance procedure manual].)

4

appeal and found no cause to reverse the decision to disqualify her.  The Interim Chair further informed Sharif that the recommendation would be forwarded to the graduate division for a final decision.  A week later, the graduate division found no reason to reverse the recommendation, and therefore the disqualification decision was final, with no additional avenue for an appeal.

II.     Sharif sues the Regents.

Sharif then sued the Regents.  Her operative first amended complaint alleged causes of action for:  (1) discrimination in violation of Education Code sections 220 and 66270;[2]

---

[2] Education Code section 220 provides, "No person shall be subjected to discrimination on the basis of disability, gender, gender identity, gender expression, nationality, race or ethnicity, religion, sexual orientation, or any other characteristic that is contained in the definition of hate crimes set forth in Section 422.55 of the Penal Code, including immigration status, in any program or activity conducted by an educational institution that receives, or benefits from, state financial assistance, or enrolls pupils who receive state student financial aid."

Education Code section 66270 provides, "No person shall be subjected to discrimination on the basis of disability, gender, gender identity, gender expression, nationality, race or ethnicity, religion, sexual orientation, or any characteristic listed or defined in Section 11135 of the Government Code or any other characteristic that is contained in the prohibition of hate crimes set forth in subdivision (a) of Section 422.6 of the Penal Code, including immigration status, in any program or activity conducted by any postsecondary educational institution that receives, or benefits from, state financial assistance or enrolls students who receive state student financial aid."

(2) discrimination in violation of Government Code section 11135;[3] (3) discrimination in violation of the Unruh Civil Rights Act, Civil Code section 51 et seq.;[4] (4) breach of an implied-in-fact contract; (5) promissory estoppel; (6) violation of due process; and (7) declaratory relief.

As to her discrimination causes of action, Sharif alleged the Regents discriminated against her on the basis of sex, sexual stereotypes, marital status, pregnancy and associated disability.

As to her implied-in-fact contract cause of action, Sharif alleged that such a contract was created by, for example, her matriculation, payment of tuition and fees, completion of her

---

[3] Government Code section 11135, subdivision (a), provides, "No person in the State of California shall, on the basis of sex, race, color, religion, ancestry, national origin, ethnic group identification, age, mental disability, physical disability, medical condition, genetic information, marital status, or sexual orientation, be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state."

[4] The Unruh Civil Rights Act provides, "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." (Civ. Code, § 51, subd. (b).)

6

coursework, teaching, publishing, and progression to complete her dissertation.

In her promissory estoppel cause of action, Sharif alleged that by offering a Ph.D. program at UCLA, the Regents promised to, with adequate notice of all requirements and for no unlawful purpose, fairly permit her to complete her program. Sharif further alleged that two weeks before she submitted her draft dissertation, Dr. Sondra Hale told Sharif that she was eligible for the fall filing fee, "which 'is intended for students who are in good academic standing and who have completed all degree requirements except for filing their dissertation.'"

Her due process violation cause of action alleged she acquired a property or liberty interest in the opportunity to complete her Ph.D. program.

Sharif also alleged that she exhausted all administrative remedies by following UCLA's Standards and Procedures for Graduate Study at UCLA (Standards and Procedures).

III.    The Regents demur.

The Regents demurred to the first amended complaint. The Regents asserted that Sharif failed to exhaust her administrative remedies pursuant to UCLA Procedure 230.2; Sharif failed to exhaust her judicial remedies, because administrative mandamus under Code of Civil Procedure[5] section 1094.5 was the exclusive remedy for relief; immunity; uncertainty; and failure to state facts sufficient to constitute any

_____

[5] All further undesignated statutory references are to the Code of Civil Procedure.

causes of action.[6]  In support of the demurrer, the Regents asked the trial court to take judicial notice of UCLA Procedure 230.2, regarding the grievance process.

Sharif opposed the demurrer and the request for judicial notice.  She argued that she exhausted her administrative remedies by following the grievance procedure in the Standards and Procedures, and she did not have to follow UCLA Procedure 230.2.  Alternatively, Sharif urged that the Regents be estopped from asserting that Sharif had to comply with UCLA Procedure 230.2, and she was not required to seek judicial review by administrative mandate because no hearing had taken place in connection with the grievance procedure.

The trial court sustained the demurrer without leave to amend, finding that Sharif had not pleaded sufficient facts showing she alleged discrimination or disability during her appeals process, and her recourse was to seek a writ of mandate as to all causes of action.

The trial court entered a judgment of dismissal, and this appeal followed.

## DISCUSSION

I.      Demurrer standard of review

When a trial court sustains a demurrer, we review the complaint de novo to determine whether, as a matter of law, it states facts sufficient to constitute a cause of action.  (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.)  Reading the complaint as a whole and giving it a reasonable interpretation,

_____

[6] The Regents also filed a motion to strike portions of the first amended complaint.

8

we treat all material facts properly pleaded as true. (*Ibid.*) The plaintiff has the burden of showing that the facts pleaded are sufficient to establish every element of the cause of action and overcome all legal grounds on which the trial court sustained the demurrer, and if the defendant negates any essential element, we will affirm the order sustaining the demurrer as to the cause of action. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879–880.) We will affirm if there is any ground on which the demurrer can properly be sustained, whether the trial court relied on proper grounds or the defendant asserted a proper ground in the trial court proceedings. (*Id.* at p. 880, fn. 10.)

Where a trial court has sustained a demurrer without leave to amend, if the plaintiff demonstrates there is a reasonable possibility the defect can be cured by amending the pleading, we will find that the trial court abused its discretion in denying leave to amend. (*Zelig v. County of Los Angeles*, *supra*, 27 Cal.4th at p. 1126.)

II.    Sharif failed to exhaust her administrative remedies as to the discrimination causes of action.

The trial court found that Sharif failed to exhaust her administrative remedies as to her discrimination causes of action because she did not comply with UCLA's internal grievance procedure. We agree.[7]

The Regents is a state government entity that administers the policies of the University of California. (*Campbell v. Regents*

---

[7] The Regents concede that Sharif exhausted her administrative remedies as to her other causes of action for implied in fact contract, promissory estoppel, due process, and declaratory relief.

9

*of University of California*, *supra*, 35 Cal.4th at p. 317.)  As such, those policies enjoy a status equivalent to that of state statutes. (*Id.* at p. 320.)  Hence, where the Regents provide an administrative remedy via its policies, that remedy must be exhausted before resorting to the courts.  (*Id.* at p. 321; *Gupta v. Stanford University* (2004) 124 Cal.App.4th 407, 411.)  The rule of exhaustion of administrative remedies is a fundamental rule of procedure and a jurisdictional prerequisite to a court action. (*Campbell*, at p. 321; see *Westlake Community Hospital v. Superior Court* (1976) 17 Cal.3d 465, 485 [doctor denied hospital staff privileges had to exhaust internal remedies before instituting judicial action].)  The rule has the important benefits of mitigating damages, recognizing the quasi-judicial tribunal's expertise, and promoting judicial economy by unearthing relevant evidence and providing a record in case of review. (*Campbell*, at p. 322.)

In this case, the parties cite the following UCLA policies governing how a student may raise allegations of discrimination: (1) the Standards and Procedures and (2) UCLA Procedure 230.2, Student Grievances Regarding Violations of Anti-discrimination Laws or University Policies on Discrimination on Basis of Disability.[8]

---

[8] The parties also cursorily cite UCLA Procedure 230.1(II), which applies to student grievances alleging discrimination on the basis of race, color, national or ethnic origin, alienage, sex, religion, age, sexual orientation, gender identity, marital status, veteran status, or physical or mental disability.  The procedure provides for a hearing and requires a formal grievance that specifies the grievance and the policy violated.

First, Sharif alleged that she relied on and followed the Standards and Procedures. Those Standards and Procedures state that lack of progress toward a degree is a ground for disqualification from a graduate program. The Graduate Dean has final authority over a disqualification decision, and an "appeal can go no higher." A disqualified student may ask the Dean of the Graduate Division to reconsider the decision, but "appeals will be considered only if based upon appropriate cause such as: (a) procedural error, (b) judgments based upon non-academic criteria, (c) personal bias, (d) specific mitigating circumstances contributing to performance, or, (e) discrimination on the basis of race, sex, or handicap not pertaining to required academic performance." In cases of appropriate cause, the Dean of the Graduate Division will refer the appeal to the Graduate Council Committee on Degree Programs, which will then make a recommendation to the Dean how to dispose of the case. The Dean then makes a final decision. Relying on and following UCLA's Standards and Procedures, Sharif appealed but the Dean upheld her disqualification.

Second, UCLA Procedure 230.2(V)(A) applies to grievances alleging harassment or discrimination based on physical or mental disability. A student raising such a claim must file a formal grievance identifying "the facts that the Student believes demonstrate that Disability Discrimination and/or Retaliation has occurred. The Student may also identify the law and/or policy believed to have been violated, and may include the preferred remedy." UCLA Procedure 230.2 then details what happens after a grievance is filed: investigation, a hearing and decision, and an appeals process.

11

Sharif points out that the Regents argued in its demurrer that she failed to follow UCLA Procedure 230.2 and did not address the Standards and Procedures, which is what Sharif expressly referred to in her operative pleading. On appeal, the Regents acknowledge that Sharif was entitled to follow the Standards and Procedures, although they assert that UCLA Procedure 230.2 was an "alternative" process Sharif could have followed to exhaust her administrative remedies.

Sharif characterizes the Regents' position on appeal that UCLA Procedure 230.2 provided an alternative process as an "about-face." Even if it is, it is also a concession. That is, Sharif alleged that the Regents referred her to the Standards and Procedures; accordingly, that is what she followed to exhaust her administrative remedies. The Regents now *agree* that Sharif could exhaust her administrative remedies by following the grievance procedure detailed in the Standards and Procedures.

The disagreement is about *how* Sharif followed the grievance procedure and not about *what* procedure she followed. Stated otherwise, the dispute about which grievance procedure Sharif should have followed is largely immaterial. Significantly, both the Standards and Procedures and UCLA Procedure 230.2 required Sharif to identify the specific grounds for her grievance. The Standards and Procedures thus required Sharif to identify an "appropriate cause" for her appeal. The Standards and Procedures identified five such grounds, which included procedural error, specific mitigating circumstances contributing to performance, *and* discrimination on the basis of race, sex, or handicap.

Sharif, however, did not identify discrimination on the basis of sex, marital status, disability, or otherwise in her

12

grievance. She instead alleged there was appropriate cause to overturn the disqualification decision on only two grounds: procedural error and mitigating circumstances. Sharif identified as mitigating circumstances a "number of personal circumstances" that "contributed to" her prolonged time to degree. She then listed those personal circumstances: marital status, family financial responsibilities, pregnancy, child and parent caregiving responsibilities, adjustments to her project, and her personal disability. Sharif identified those personal circumstances as *reasons* why it was taking her so long to achieve her degree. She did not identify them as ways in which she had been discriminated against that prevented her from achieving her Ph.D. Sharif also suggests that she gave notice to the Regents that she was claiming discrimination based on disability by attaching to her appeal a letter from a psychologist attesting to her disabling condition and recommending accommodation.[9] However, telling the Regents she had a disability and requesting accommodation is not the same as notice of a claim of discrimination based on a disability. She therefore failed to exhaust her administrative remedies because she did not alert the Regents that discrimination was a ground for her grievance.[10]

_____

[9] Sharif did not attach the letter to her operative complaint.

[10] Given the Regents' concession that Sharif could follow the Standards and Procedures and our resolution of this issue, we need not address Sharif's contention that the Regents should be estopped from claiming she failed to exhaust her administrative remedies per UCLA Procedure 230.2. As we have said, the Regents now agree that Sharif could raise any grievance she had

13

Finally, Sharif appears to make a cursory argument that she was not required to exhaust her administrative remedies as to her second cause of action for discrimination (Gov. Code, § 11135) and third cause of action for discrimination under the Unruh Civil Rights Act. However, the cases she cites do not directly address or hold that such causes of action are exempt from the exhaustion doctrine. (See, e.g., *Donovan v. Poway Unified School Dist.* (2008) 167 Cal.App.4th 567, 594 [plaintiff may bring private right of action for equitable or injunctive relief under Gov. Code, § 11135];[11] *Blumhorst v. Jewish Family Services of Los Angeles* (2005) 126 Cal.App.4th 993, 1002 [addressing standing]; *Payne v. Anaheim Memorial Medical Center, Inc.* (2005) 130 Cal.App.4th 729, 732–733, 743–744 [plaintiff did not have to exhaust administrative remedies in Unruh Civil Rights Act action because defendant's internal grievance procedures were inadequate].) We decline to read more into those opinions than what they directly address. (See, e.g., *In*

---

by following the Standards and Procedures *or* by following UCLA Procedure 230.2. The Regents simply disagree that she raised discrimination *at all*.

[11] *Donovan v. Poway Unified School Dist.*, *supra*, 167 Cal.App.4th at pages 592 to 596, considered whether money damages are available for a violation of Education Code section 220. *Donovan*, at page 594, noted that Education Code section 220 is similar to Government Code section 11135, which may be enforced by a civil action for equitable relief, which shall be independent of other rights and remedies. To the extent *Donovan* might support a conclusion that one need not exhaust administrative remedies before pursuing equitable remedies, it is dictum.

*re Chavez* (2003) 30 Cal.4th 643, 656 [case is authority only for proposition actually considered].)

III.     Sharif's contract-based causes of action.

Turning to Sharif's causes of action for implied-in-fact contract and promissory estoppel, we now explain why contract law is an inappropriate context in which to raise her claims in this case.[12]

The basic relationship between a student and a university has been described as contractual in nature. (*Kashmiri v. Regents of University of California* (2007) 156 Cal.App.4th 809, 823–824; *Zumbrun v. University of Southern California* (1972) 25 Cal.App.3d 1, 10; see *Paulsen v. Golden Gate University* (1979) 25 Cal.3d 803, 811 (*Paulsen*).)  However, courts also have recognized that contract law should not be strictly applied in this context due to the uniqueness of that relationship. (*Kashmiri*, at p. 824.)  In that relationship, universities have the widest range of discretion in making judgments about their students' academic

_____

[12] The Regents urge us not to address the merits of the individual causes of action because Sharif did not address them in her opening brief on appeal.  Sharif therefore has arguably forfeited any issue as to the substantive merits of her causes of action.  However, as our review is de novo and requires us to uphold the sustaining of a demurrer if correct for any reason, even one not relied on by the trial court, we exercise our discretion to review whether Sharif stated facts sufficient to constitute the causes of action.

In their respondent's brief on appeal, the Regents also ask to file supplemental briefing if we address the merits of the causes of action.  The request is denied, as the Regents did address the merits in their brief.

15

performance and entitlement to promotion or graduation, and judicial review of such a judgment is "a 'narrow avenue' restrained by '[c]onsiderations of profound importance.'" (*Lachtman v. Regents of University of California* (2007) 158 Cal.App.4th 187, 203–204 (*Lachtman*).) Courts therefore have often declined to strictly apply a contract-based challenge to universities' academic and disciplinary decisions because courts are not qualified to review decisions concerning a student's academic qualifications. (*Kashmiri*, at pp. 824–826.) Still, where an educational institution has made a *specific* promise to provide an educational service, such as certain classes or a promised number of instructional hours, courts will apply contract law. (*Id.* at p. 826.)

Here, Sharif asserted two contract-based causes of action. The first, implied-in-fact contract, has the same essential elements as an express contract, namely, mutual assent and consideration. (*Chandler v. Roach* (1957) 156 Cal.App.2d 435, 440.) The difference between the two is that in the former, the promise is implied from the promisor's conduct, rather than expressed in words. (*Ibid.*) Similarly, the elements of her second cause of action for promissory estoppel are (1) a clear and unambiguous promise; (2) reliance by the party to whom the promise is made; (3) reasonable and foreseeable reliance; and (4) the party asserting the estoppel must be injured by the party's reliance. (*US Ecology, Inc. v. State of California* (2005) 129 Cal.App.4th 887, 901.)

Both causes of action require a clear and specific representation, either by conduct or in words. As we understand the operative complaint, the representation or promise Sharif contends the Regents made to her is that she would receive a

16

Ph.D. or have the opportunity to receive one. This promise, Sharif further alleges, arose by virtue of her paying tuition and fees, matriculating, completing her courses, teaching, remaining in good standing throughout her graduate studies, and working on her dissertation. Moreover, two weeks after Sharif submitted her draft dissertation, a member of Sharif's doctoral committee told Sharif that she was eligible for the fall filing fee, which " 'is intended for students who are in good academic standing and who have completed all degree requirements except for filing their dissertation.' "

To be sure, Sharif's payment of tuition and work toward her degree establish that she had a contract-based relationship with the Regents. (See, e.g., *Andersen v. Regents of University of California* (1972) 22 Cal.App.3d 763, 769.) But her allegations do not establish that any such contract contained a guarantee she would obtain a Ph.D. Neither Sharif's normal activities in pursuit of her doctorate nor the isolated comment about her eligibility for the fall filing fee constituted a promise—implied or otherwise—that she would get a doctorate. That Sharif, for example, paid tuition and was in good standing *are things that she did*, not promises the Regents made. As such, they might go to the existence of a contract and to the reliance element of her causes of action, but they do not constitute a promise by the Regents that she would get a Ph.D. All that the allegations otherwise show is that Sharif had a relationship with the Regents and that she engaged in those activities that all doctoral students must do in pursuit of a degree.

Nor does the committee member's statement that Sharif was eligible for the fall filing fee constitute a representation that Sharif would get her doctorate or that her uncompleted

17

dissertation was satisfactory. And insofar as Sharif contends that she was promised the *opportunity* to complete her degree, then her operative pleading establishes she was given that opportunity for about 10 years.

Moreover, matters judicially noticeable contradict her allegation that she was promised a degree. The Standards and Procedures detailed the requirements for a doctoral degree, including completing an approved dissertation and achieving the degree within a normative time. Failure to progress toward a degree is a listed ground for disqualification from a graduate program. What these judicially noticeable matters establish is that there were prerequisites to an award of a Ph.D., and Sharif knew about them. The mere existence of such prerequisites, including a normative time to degree, undercuts her claim she was promised a degree.

These allegations thus fall short of creating a *contractual* basis for Sharif's claims. They do not establish either an implied-in-fact contract that Sharif would receive a Ph.D., or that specific promises were made to her such that the Regents must be estopped from disqualifying Sharif. The notion of a *promise* that Sharif *would receive* her Ph.D. is contrary to the very idea of what it means to pursue and to earn a graduate degree. For these reasons, Sharif's allegations do not state the contract-based causes of action as a matter of law. And, as Sharif has not addressed the merits of her causes of action and does not state how she could amend her complaint, the trial court did not abuse its discretion in denying her leave to amend.

That being said, to the extent Sharif alleges that she had a contractual right to due process, those allegations are better addressed in her due process cause of action, to which we now

18

turn.  (See, e.g., *Award Metals, Inc. v. Superior Court* (1991) 228 Cal.App.3d 1128, 1135 [demurrer properly sustained to duplicative cause of action adding nothing by way of fact or theory].)

IV.    The due process and declaratory relief causes of action

Sharif alleged that the Regents denied her due process because it unfairly, unreasonably, and for arbitrary reasons failed to afford her a fair and reasonable opportunity to complete the Ph.D. program.  As we now explain, we agree that she can proceed on this cause of action.

Although no "United States or California Supreme Court opinion holds a student has a property or liberty interest in continued enrollment in good standing in an academic program," courts have assumed that students have a protected interest in maintaining enrollment in an academic program.  (*Lachtman*, *supra*, 158 Cal.App.4th at p. 199.)  In raising a violation of that interest, courts have recognized that procedural and substantive due process protections are afforded to students.

Procedural due process is satisfied if the university informs the student of its dissatisfaction with the student's academic performance, informs the student of the consequences of deficient performance, and a decision regarding the student's academic progress is careful and deliberate.  (*Lachtman*, *supra*, 158 Cal.App.4th at p. 201.)  However, procedural due process does not require a university to provide a student a formal hearing.  (*Ibid.*)

Substantive due process rights will be violated if the challenged decision was the product of arbitrary state action rather than a conscientious, careful, and deliberate exercise of a professional judgment.  (*Lachtman*, *supra*, 158 Cal.App.4th at p. 204; accord, *Paulsen*, *supra*, 25 Cal.3d at p. 809; *Banks v.*

19

*Dominican College* (1995) 35 Cal.App.4th 1545, 1551 [court may overturn decision dismissing student for academic reasons resulting from irrelevant or discriminatory factors]; *Shuffer v. Board of Trustees* (1977) 67 Cal.App.3d 208, 219–220; *Wong v. Regents of University of California* (1971) 15 Cal.App.3d 823, 830–832.)

As to her procedural due process rights, Sharif does not appear to contend that a formal hearing was required before she could be disqualified for failing to complete her degree in the normative time or for turning in an unsatisfactory dissertation draft, nor could she. (See, e.g., *Lachtman, supra*, 158 Cal.App.4th at p. 201.) Instead, a fair reading of her operative pleading is that her procedural due process rights were violated because the department did not give her notice it was dissatisfied with her performance and of the consequences of failing to meet her dissertation deadline. She alleged that the first time anyone mentioned her progress was at the September 2016 meeting, when the deadline to submit her dissertation was established. At that meeting, nobody mentioned she had exceeded the normative time to degree or could be disqualified if she failed to meet the schedule. Instead, she alleged that the department first told her of its dissatisfaction with her progress in September 2017, when it simultaneously recommended terminating her doctoral status.

However, the 2003 UCLA Graduate Student Academic Rights and Responsibilities handbook stated that graduate students "have the right to know the normative time to degree, the average time to degree, and the maximum allowed time to degree within their graduate programs," and this information "should be explicitly communicated to newly admitted students." It also stated that any intent to dismiss a student from a

graduate program must be preceded by specific written performance information, well in advance of actual dismissal. While the handbook referred to the Standards and Procedures, the Standards and Procedures did not state that the normative time for her doctorate was six years. The 2017-2018 Graduate Handbook did contain this six-year normative time to degree, but no prior handbook mentioned a maximum time to degree. In sum, UCLA's own materials stated that students must be informed of the normative time to degree; yet Sharif alleged that she was never told that the normative time was six years.

Also, contrary to the mandate that a student be told of an intent to dismiss them well in advance of actual dismissal, Sharif alleged she received no such notice. She alleged, instead, that she was first told that she was being disqualified as a doctoral candidate in September 2017, and was actually disqualified two months later, after exhausting her administrative remedies. The Regents suggest that Sharif did have such notice; that is, she had a one year probationary period that began in September 2016 when the executive committee set the dissertation deadline. However, that is a factual dispute, but we accept the factual allegations in the operative complaint as true on demurrer. (See, e.g., *Richtek USA, Inc. v. uPI Semiconductor Corp.* (2015) 242 Cal.App.4th 651, 659–660.)

Finally, evidence that a student was treated differently from others in a like situation may be relevant to show the university acted arbitrarily or in bad faith. (*Paulsen, supra,* 25 Cal.3d at p. 809.) Sharif alleged that no doctoral candidate has been disqualified for failing to meet the normative time to degree, and former and current students have or are taking

longer to obtain their degrees. In short, Sharif alleged that she was treated differently from other doctoral candidates.

Based on these allegations, Sharif may proceed on her due process cause of action, as well as her cause of action for declaratory relief insofar as it is dependent on and relates to the alleged due process violations. In so finding, we recognize that courts will rarely intervene in a university's academic affairs, particularly in actions challenging a university's academic decisions regarding a student's qualification for a degree. (*Paulsen*, *supra*, 25 Cal.3d at p. 808; *Banks v. Dominican College*, *supra*, 35 Cal.App.4th at p. 1551.) Still, cases upholding such refusals to intervene are generally reviewing summary judgment motions, after the development of evidence. (See, e.g., *Lachtman*, *supra*, 158 Cal.App.4th at p. 192; *Banks*, at pp. 1547–1548.) Our review is after the sustaining of a demurrer. Given this procedural posture, we cannot find at this stage of the proceedings, when we must view the allegations of the complaint as true, that Sharif has not stated facts sufficient to constitute the cause of action.

V.      Sharif was not required to pursue an administrative writ.

Having found that Sharif may proceed on her due process and declaratory relief causes of action, we address the Regents' argument that those causes of action are nonetheless barred because Sharif failed to exhaust her judicial remedies. As we now explain that doctrine does not bar the entire lawsuit.

The doctrine of exhaustion of judicial remedies precludes an action challenging the result of a quasi-judicial proceeding unless the plaintiff first challenges the decision via a petition for writ of mandamus. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 70.) The doctrine accords proper respect to an

22

administrative agency's quasi-judicial procedures by precluding a party from circumventing the established process for judicial review of such decisions by means of a petition for administrative mandate and provides a uniform practice of judicial, rather than jury, review of quasi-judicial administrative decisions. (*Ibid.*) The doctrine thus applies where "there has been an adjudicatory, quasi-judicial decision in accordance with established public or private procedures," and "the prior administrative proceedings possessed the requisite 'judicial character' such that they yielded decisions or findings that could later be given preclusive effect." (*Y.K.A. Industries, Inc. v. Redevelopment Agency of City of San Jose* (2009) 174 Cal.App.4th 339, 361.)

The Regents urge us to apply the doctrine and to conclude that Sharif had to pursue any review of its decision to disqualify her via an administrative writ, either under section 1094.5 or 1085. Section 1094.5, subdivision (a), provides for the issuance of a writ of mandate where the writ is issued to inquire into "the validity of any final administrative order or decision made *as the result of a proceeding in which by law a hearing is required to be given*, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer." (Italics added.) Section 1085, subdivision (a), provides for the issuance of a writ to any inferior tribunal "to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party" has been unlawfully precluded.

Section 1094.5 does not apply here, because the Standards and Procedures that Sharif followed did not require or entitle her

23

to a hearing; hence, she had none.  And, as we have said, the Regents concede on appeal that Sharif was entitled to follow those Standards and Procedures.  They further concede that Procedures 230.1 and 230.2, which would have given her the right to a hearing, offered an "alternative" process.  Given these concessions, the Regents cannot now argue that Sharif had to bring a petition for a writ of mandate under section 1094.5 merely because she had the opportunity for a hearing under the *alternative* process in Procedures 230.1 and 230.2.

Therefore, ordinary mandate under section 1085 is most applicable because it is used to review adjudicatory decisions when the agency was not required to hold an evidentiary hearing. (See generally *American Board of Cosmetic Surgery v. Medical Board of California* (2008) 162 Cal.App.4th 534, 547 [mandamus under § 1085 is used to compel ministerial duty or to correct abuse of discretion]; *Bunnett v. Regents of University of California* (1995) 35 Cal.App.4th 843, 848; *Wellbaum v. Oakdale Joint Union High School Dist.* (1977) 70 Cal.App.3d 93, 96 [where petition challenges agency's failure to perform act required by law rather than the conduct or result of an administrative hearing, remedy is by ordinary mandate].)  A ministerial duty is an act that must be performed in a prescribed manner according to the mandate of legal authority without the exercise of discretion or judgment.  (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916.)  To establish entitlement to relief, the moving party must demonstrate the agency's action was arbitrary, capricious or entirely without evidentiary support, or failed to conform to procedures required by law.  (*People for Ethical Operation of Prosecutors etc. v. Spitzer* (2020) 53 Cal.App.5th 391, 407.)

Although we agree that Sharif could have sought a writ under section 1085, the Regents have not cited authority holding that it was her only avenue of relief. Rather, the cases the Regents cite involved grievance processes in which hearings were held or were offered. (See, e.g., *Gupta v. Stanford University*, *supra*, 124 Cal.App.4th at p. 409 [where plaintiff had evidentiary hearing, judicial review had to be pursued under § 1094.5]; *Gutkin v. University of Southern California* (2002) 101 Cal.App.4th 967, 971, 978–979 [same]; *Pomona College v. Superior Court* (1996) 45 Cal.App.4th 1716, 1727–1730 & fn. 10 [same].) Other cases the Regents cite did not expressly hold that a writ under section 1085 is the exclusive avenue of relief. (See, e.g., *Shuffer v. Board of Trustees*, *supra*, 67 Cal.App.3d at p. 218 [stating only that ordinary mandate is a "proper" remedy, not only remedy]; *Wong v. Regents of University of California*, *supra*, 15 Cal.App.3d 823; see *Alborzi v. University of Southern California* (2020) 55 Cal.App.5th 155, 162, 176 [doctor did not have to exhaust judicial remedy under § 1085].) As we have said, a case is authority only for a proposition actually considered and decided. (*In re Chavez, supra*, 30 Cal.4th at p. 656.)

In the absence of clear authority holding that Sharif had to exhaust her judicial remedies by first seeking a writ of mandate under section 1085 before filing this action, we conclude that she may pursue her due process and declaratory relief causes of action.

## DISPOSITION

The judgment is reversed as to the sixth and seventh causes of action with the direction to the trial court to overrule the demurrer as to them. The judgment is affirmed as to the remaining causes of action. The parties shall bear their own appellate costs.

NOT TO BE PUBLISHED.


WINDHAM, J.*

We concur:


CHAVEZ, Acting P. J.


HOFFSTADT, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.